UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MAXINE BROWN, a single person,

Plaintiff,

v.

STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES,

Defendant.

Case No. C05-5635 FDB

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Department of Social and Health Services' Motion for Summary Judgment. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion. Plaintiff's federal discrimination claims based on disability and race are dismissed, with prejudice. The state law claims are dismissed as the Court declines to exercise supplemental jurisdiction over these claims.

**INTRODUCTION AND BACKGROUND**

Plaintiff Maxine Brown contracted with Washington State Department of Social and Health Services (DSHS) as an independent contractor to provide psychological counseling and family preservation services. Plaintiff's complaint alleges that during the course of these contracts DSHS refused to provide Ms. Brown with referrals due to her disability (blindness) and race (African American). Plaintiff asserts federal causes of action for violation of equal rights under 42 U.S.C. §

ORDER - 1

1981 and violation of the Americans with Disability Act (42 U.S.C. § 12132). The complaint asserts state law claims for tortious interference with contractual relations, tortious interference with business expectancy, negligence, and violation of Washington's Law Against Discrimination (RCW 49.60).

DSHS removed the action to this Court based on the claims arising under federal law. The Defendant moves for summary judgment on all claims. It is DSHS's primary contention that due to Ms. Brown's criminal history and the failure to disclose such in her contract application she was not qualified to be a DSHS contractor and as such she cannot maintain this action. The Defendant further contends that Ms. Brown has not made out a prima facie case of discrimination.

In July of 1997 Ms. Brown moved from California to Washington. In April of 1998, Ms. Brown filed an application for a contract to provide services to clients of DSHS' Division of Developmental Disabilities (DDD). Because Ms. Brown had not resided in Washington for three years, a fingerprint background check was run on Ms. Brown. Her fingerprints were sent to the FBI, which established that she had used five aliases in the past and had an extensive criminal history in Oklahoma, Nevada and California. Ms. Brown's criminal history included prostitution, burglary, robbery, drug offenses and assault with intent to murder. On the basis of this criminal history, Ms. Brown was disqualified by DDD from performing contract work with developmentally disabled individuals.

In March of 1998, Ms Brown applied for a contract with another department of DSHS, the Children's Administration, to provide professional services (therapy and treatment). Ms. Brown was also required to submit to a criminal background check with this division of DSHS. She signed the authorization form that she had never been convicted of a crime and never been found to have abused or neglected a child. She signed under the penalty of perjury that she affirmed the truthfulness of the statements made and understood that untruthfulness or misleading answers would be cause for termination of the contract. Unlike the checks performed by the DDD, the background

ORDER - 2

check performed by the Children's Administration consisted of only in-State checks through the Washington State Patrol and did not include fingerprint checks.  Ms. Brown had no criminal history in Washington and accordingly no disqualifying information was discovered.   Ms. Brown was awarded a professional service contract commencing in March 1998 that was renewed in 2001 and 2005.  In February of 2003, Ms Brown applied for a family preservation services contract with the Children's Administration.  This contract began in 2003 and was also renewed twice.

In 2000 the various background check units of DSHS were merged into the Background Check Central Unit (BCCU).  In 2002 the BCCU implemented a single process and data base for background checks.  Prior to this date, Ms. Brown's disqualification due to her extensive criminal history had only been available to DDD due to its more extensive fingerprint check protocol.  On May 8, 2006, a child placing agency submitted a background authorization signed by Ms. Brown to authorize Ms. Brown to counsel foster children.  Due to the implementation of centralized background checks, Ms. Brown's criminal history was accessed and she was disqualified by the Children's Administration, as she had by DDD in 1998.

In deposition testimony, although unable to remember all the particulars of her criminal history, Ms Brown admitted to her criminal background and the use of aliases.  She did not dispute the criminal record, but justified her nondisclosure by indicating her criminal record had been"expunged" prior to moving to Washington.  Ms Brown, however, failed to provide any of the requested documentation supporting her claim of expungement.

Ms. Brown contends she did not obtain any referrals from DSHS on the basis of her disability, blindness.  Ms. Brown's allegation of racial discrimination consists of the fact that she is an African American woman and she feels she was treated like a child, talked down to, and no one ever shook her hand.

The Defendant responds that the services contracts do not provide a right to referrals.  The terms of the professional services contracts with Children's Administration required the contractor to

ORDER - 3

provide services only upon receipt of and in accordance with a written authorization form issued by DSHS.  The contract provides that DSHS shall only pay for authorized services actually performed and authorized, in advance, in writing.  The contract also provided for dispute resolution through an adjudicative proceeding.  The terms of the family preservation services contracts provide that the contract does not obligate DSHS to purchase services from the contractor.  Services are requested on a as-needed basis and payment made on a fee-for service basis.  This contract also provides for dispute resolution as the sole administrative remedy.  Defendant contends there is no evidence that Ms. Brown was discriminated against because of her disability or race.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the opposing party must show that there is a genuine issue of material fact for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party may not rest upon the mere allegations or denials of the moving party's pleading, but must present significant and probative evidence to support its claim. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purposes of this motion, reasonable doubts as to the existence of material facts are resolved against the moving party and inferences are drawn in the light most favorable to the opposing party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is mandated where the facts and the law will reasonably support only one conclusion.

ORDER - 4

**AMERICANS WITH DISABILITIES ACT**

Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  In order to state a claim that a public program or service violated Title II of the ADA, a plaintiff must show: (1) she is a qualified individual with a disability; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability.  McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001).

With respect to the first element, DSHS asserts that Ms. Brown is not a "qualified individual" with a disability due to her criminal history and her failure to disclose such in her applications for service contracts.  This Court is in agreement.  A qualified individual with a disability is defined as an individual with a disability who, with or without reasonable modifications, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.  42 U.S.C. § 12131(2); U.S. v. Georgia, 546 U.S. 151, 126 S.Ct. 877, 879 (2006).  Ms. Brown's criminal history and /or failure to disclose precludes her from meeting the essential eligibility requirements of providing contract services for DSHS.

Additionally, in respect to the second element, Title II of the ADA does not apply to employment contracts.  Obtaining or retaining a job is not "the receipt of services," nor is employment a "program or activity" provided by a public entity.  The statute governs a relationship between a public entity, on the one hand, and a member of the public, on the other.  Zimmerman v. Oregon Dept. of Justice, 170 F.3d 1169, 1176 (9th Cir. 1999).  Ms. Brown in seeking recovery based on her contractual relationship with DSHS is not acting as a member of the public, but as a

ORDER - 5

contractor in a employment relationship. Accordingly, she may not maintain an action pursuant to Title II of the ADA.

Further, it appears that Ms. Brown was not denied any benefit of the service contracts. She was awarded two types of contracts. The contracts did not provide an entitlement to referrals. DSHS fulfilled its obligation under the contracts by placing Ms. Brown's name on the approved provider lists.

Any one of these basis independently provide that Ms. Brown cannot maintain a disability discrimination claim under the Americans with Disabilities Act.

## EQUAL RIGHTS UNDER 42 U.S.C. § 1981

Ms. Brown's complaint asserts an all encompassing equal rights claim pursuant to 42 U.S.C. § 1981 on the basis of racial discrimination. The complaint states Plaintiff suffered race discrimination in the form of disparate treatment, termination, constructive discharge, retaliation, and other racially hostile actions.

These allegation deserve little comment as the Court finds no evidence to support these allegations. Plaintiff must meet the same standards in proving a § 1981 claim that she must meet in establishing a claim under Title VII and § 1983. Manatt v. Bank of America, NA, 339 F.3d 792, 797 (9th Cir. 2003); Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir. 1991). To establish a violation of the equal protection guarantee, a plaintiff must show that the defendant intentionally discriminated against her on the basis of her race. Evans v. McKay, 869 F.2d 1341, 1344 (9th Cir. 1989); Washington v. Davis, 426 U.S. 229, 242 (1976).

To make out a prima facie case of disparate treatment, Ms. Brown must show that: (1) she belonged to a protected class; (2) she was performing his job in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) similarly situated employees not in her protected class received more favorable treatment. Kang v. U. Lim America, Inc., 296 F.3d 810, 818 (9th Cir. 2002). Ms. Browns's allegations that she was treated differently based on her race are supported by

ORDER - 6

nothing more than Plaintiff's subjective belief.  Ms. Brown has failed to establish a prima facie case of discrimination based on race.

To establish prima facie hostile work environment claim under either Title VII or § 1981, employee must raise triable issue of fact as to whether (1) he was subjected to verbal or physical conduct because of his national origin, (2) conduct was unwelcome, and (3) conduct was sufficiently severe or pervasive to alter conditions of his employment and create abusive work environment. Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).  A hostile work environment exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment. Faragher v. Boca Raton, 524 U.S. 775, 786 (1998).  The conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment; an environment a reasonable person in the plaintiff's position would find hostile or abusive considering all the circumstances. Faragher, at 787; Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998); Ellison v. Brady, 924 F.2d 872, 879 (9th Cir.1991). The Plaintiff's allegations fall short of the severity of conditions that constitute a hostile work environment.  See, Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003).

To establish a prima facie case of retaliation, Plaintiff must produce specific and substantial evidence that she (1) engaged in statutorily protected activity; (2) thereafter suffered an adverse employment action at the hands of her supervisors and (3) a causal link exists between her protected activity and the adverse employment action. Vasquesz v. County of Los Angeles, 307 F.3d 884, 896 (9th Cir. 2002); William Ray v. William Henderson, Postmaster General, 217 F.3d 1234, 1239 (9th Cir. 2000).  Plaintiff must present evidence sufficient to raise an inference that her protected activity was the "likely reason" for the adverse action. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).  Ms. Brown has produced no evidence of a causal link between her discrimination complaint and any adverse employment action.

ORDER - 7

1    Plaintiff's complaint and deposition testimony provide nothing more than bare assertions of
2 racial discrimination. These are insufficient to sustain a claim of purposeful discrimination. See,
3 Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983); Lindahl v. Air France, 930 F.2d 1434,
4 1437 (9th Cir. 1991). Plaintiff has presented no evidence to establish intentional discrimination.
5 Plaintiff's subjective personal judgment that there must have been discrimination because she was not
6 provided referrals does not raise a genuine issue of material fact to support a claim of race
7 discrimination. See, Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir. 1996).

## SUPPLEMENTAL JURISDICTION

9    The court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C.
10 § 1367(a). Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental
11 jurisdiction over state-law claims where the court has dismissed all claims over which it has original
12 jurisdiction. Voigt v. Savell, 70 F.3d 1552, 1565 (9th Cir. 1995). "In the usual case in which all
13 federal-law claims are eliminated before trial, the balance of factors to be considered under the
14 pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward
15 declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v.
16 Cohill, 484 U.S. 343, 350 n. 7 (1988). The balance of factors generally indicates that a case belongs
17 in state court when the federal-law claims have dropped out of the lawsuit in its early stages and only
18 state-law claims remain. Id.
19   Here, Ms. Brown's federal claims will all be dismissed prior to trial. Because the Court is
20 able to decide plaintiff's federal claims without reaching the issues underlying plaintiff's state-law
21 claims remaining in this case, the court will decline to exercise supplemental jurisdiction over the
22 state-law claims pursuant to 28 U.S.C. § 1367(c)(3). See, Acri v. Varian Assocs., Inc., 114 F.3d
23 999, 1000 (9th Cir.1997).

## CONCLUSION

ORDER - 8

For the reasons set forth above, Defendant is entitled to dismissal of Plaintiff's claims of discrimination based on disability (ADA) and race (Section 1981). The Court declines to retain supplemental jurisdiction over the state law claims.

ACCORDINGLY,

IT IS ORDERED:

Defendant's Motion for Summary Judgment [Dkt #44] is **GRANTED**. The federal claims are dismissed with prejudice and the state law claims dismissed, as the Court declines supplemental jurisdiction.

DATED this 8th day of November, 2006

_____
FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 9